C. T. SMITH et al. *v.* DAVID J. ALLEN and wife.

1. INSOLVENT DEBTOR : MAY MAKE A GIFT OF A CHATTEL EXEMPT FROM EXECUTION.—An insolvent debtor may make a valid donation of a chattel which is by law exempt from seizure and sale for the payment of his debts.

2. SAME : SAME : CASE IN JUDGMENT.—An insolvent debtor, who was engaged in business which subjected him to the will of his employer as to where he should reside, made in this State, where he was then domiciled, a gift, in good faith, to his wife, of a slave which he held exempt by law from execution, and in a few days thereafter, in obedience to the command of his employer, removed to Tennessee, leaving the slave in this State :—*Held*, that the gift to the wife was valid, and that the slave was not subject to the payment of a judgment rendered in this State against the husband before the gift to the wife was made.

3. SAME : HUSBAND AND WIFE : INSOLVENT HUSBAND MAY GIVE HIS WIFE A CHATTEL EXEMPT FROM EXECUTION.—The proviso to Art. 23, p. 336, of Rev. Code, which declares, "that any deed from the husband to the wife, for her use, shall be void as against his creditors, who were such at the time of executing the deed," does not prevent a voluntary conveyance to the wife by the husband of a chattel which is exempt by the laws of this State from seizure and sale for the payment of his debts.

APPEAL from the Chancery Court of Marshall county. Hon. James F. Trotter, chancellor.

The decree of the court below was, that the defendants (now appellants) should restore the slave sued for, and pay hire for the time they had had him in possession.

From this decree the defendants appealed.

*Watson* and *Clapp*, for appellants.

It is manifest from the proofs in this case that the slave Elijah was given by Allen to his wife, November 3, 1858, in contemplation of their removal from the State. There was no motive for the gift, unless it was made in contemplation of removal. In this State the slave was by law secured to Allen during his life, and at his death descended to his wife.

The exemption laws of this State has no extraterritorial operation, and, therefore, on the removal of Allen to Tennessee, the slave would have been there liable to his debts. And so, too, on their removal to Tennessee, leaving the slave in this State, he would have been liable to Allen's debts. *Boykin* v. *Edwards*, 21 Ala. R. 261; *Allen* v. *Wanapee & Moseley*, 4 Id. 554; *Hawkins* v. *Pearce*, 11 Humph. 44. Allen did remove from the State, with his family, December 7, 1858, leaving the slave Elijah behind him in this State, and the executions of plaintiffs in error were levied upon him in February, 1859. See testimony of Hill, Transcript, p. 29. The statement by the counsel of defendants in error in their brief, that, when plaintiffs in error had levy made on Elijah, defendant in error David T. Allen had two other slaves in his possession liable to levy and sale, &c., is an error. See concluding paragraph of their brief. When this levy was made, said Allen was a citizen of Tennessee, and had no property in this State but the slave Elijah. The cases of *Ratcliff* v. *Dougherty*, 24 Miss. R. 181, and *Wells* v. *Treadwell*, 28 Miss. R. 717, have no bearing on the present case. They were contests, not between the husband and his creditors, but between the legal representatives or heirs of the husband and his widow.

Had Allen removed from Mississippi without having previ-

ously conveyed or attempted to convey his title to the slave in controversy, and leaving him here as his property, the right of plaintiffs in error to levy their executions upon him would have been unquestionable, and this right as against Mrs. Allen, it is submitted, is protected and upheld by the proviso found in Art. 23, Rev. Code, p. 336, in these words: "Provided, that any deed from the husband to the wife, for her use, shall be void as against his creditors, who were such at the time of executing the deed."

The judgments of plaintiffs in error were recovered in March, 1858, and therefore they were the *judgment creditors of the husband at the time of his executing the deed* under which Mrs. Allen now claims. It may be that a person can make, even as against his creditors, a valid sale or gift of property he holds exempted from execution, to any person but his wife; because there is no law prohibiting this. But there is an express law declaring any deed from a husband to his wife void as against his creditors "who were such at the time of executing the deed." This provision of law was necessary to the security and protection of creditors. Without it, a husband owning a slave exempt from execution could have conveyed it to his wife, and thus secured it against the claims of his creditors; and then, acquiring another slave, could have done the same thing, and this process might have been carried on to an extent that would have enriched the family of the husband, whilst his creditors would have been left without redress.

*Featherston, Harris* and *Watson,* for appellees.

Proof in this case shows that the negro Elijah was the property of David J. Allen on the 3d of November, 1858, when the conveyance was made by him to his wife Frances R.; that he had raised him, owned him for years, and there was no doubt about his title. Under the exemption laws of this State, he was required only to select him from among the number of his slaves, and claim him as reserved and exempt, so as to vest in him a perfect right of disposal; that he did so reserve said negro Elijah: vide testimony of Hill and Allen.

It is further shown conclusively by the testimony that the said David J. was a permanent citizen of the State of Mississippi

at the time of the said reservation, and that he was the head of a family and a householder, coming therefore clearly in the provision of the statute; and, having asserted his right legally, he acquired a title placed above and beyond his creditors, and as such could convey to his wife or any one else.

Having a perfect title himself on the 3d November, 1858, he conveyed a perfect equitable title to his wife Frances R. by his deed of that date.

This conveyance was not made in contemplation of their removal from the State, as is shown from the testimony. Their subsequent removal from the State did not affect the title of the wife; her title having vested, could not be divested but by act of law or by her own act. *Brown* v. *Brown*, 4 George, 39.

The debts of appellants having been contracted before the exemption laws were enacted, does not affect her title. *Morrison* v. *McDaniels*, 1 George, 213.

The sale of property, or the conveyance of property, before a lien attaches, vests a good title in the purchaser. *Stephens* v. *Mangum*, 27 Miss. R. 481; *Dozier* v. *Lewis*, Id. 679.

In this case the negro was reserved by Allen while he and his wife were both citizens of this State, before the judgments of the appellants were rendered, and consequently before any lien could attach to the property, if it had been subject to judgment lien.

A gift by a husband to his wife will be enforced in equity if reasonable, but not against creditors. *Ratcliff* v. *Dougherty*, 24 Miss. R. 181; *Warren* v. *Brown*, 25 Id. 66; *Wells* v. *Treadwell*, 28 Id. 717. In this case, at the time of the conveyance by Allen to his wife, he had no creditors as against this property; it was exempt from levy and sale, and placed beyond the reach of all creditors. The conveyance must therefore be upheld in equity.

That a debtor, whose property is exempt by law, may sell or convey the same and make good title: see 15 Ala. R. 826. If he has the power to sell, he has the power to give it away. A debtor, whose property is exempt from levy and sale, may execute a valid mortgage on the same. 2 B. Monroe, 19. A debtor whose property is exempt from levy and sale does not forfeit

C. T. Smith et al. *v.* David J. Allen and wife.

his title to the same by absconding from the State. 11 Ala. R. 164.

These statutes exempting property are to be liberally construed for the benefit of the debtor. 3 Humph. 213; 11 Wend. 45; 18 Johns. 400; U. S. Dig. 1855 and 1856, p. 262.

The proviso contained in the statute, (Rev. Code, p. 336, Art. 23,) declaring that any deed from the husband to the wife, for her use, should be void as against his creditors, has no application to the conveyance of Allen to his wife. The property conveyed in this deed was placed beyond the reach of his creditors by the exemption laws, and, so far as this negro was concerned, he had no creditors. The proviso referred to was only intended to apply to conveyances of property by the husband to the wife where the property is subject to the husband's debts.

The proof shows that at the time the judgments of the appellants were levied upon the boy Elijah, the said David J. had in his possession two other negroes that were liable to levy and sale; that they were pointed out by the said David J. to the sheriff, who refused to levy on them, the said David J. at the same time notifying the sheriff that Elijah had been reserved by him under the exemption laws.

HANDY, J., delivered the opinion of the court:

The bill in this case was filed by the appellees to recover a slave in the possession of the appellants.

It appears that the appellants were judgment creditors of David J. Allen prior to the 3d November, 1858; that Allen had in his possession a slave which he had selected and claimed as his property exempt from execution under the statute, and that on that day he executed a deed of gift of this slave to his wife, they being then residents of this State, where they had resided for three or four years, and he the head of a family; that Allen, being a preacher of the Methodist church, and belonging to the Memphis conference and subject to its orders, left his residence at Holly Springs to attend the conference, which met at Trenton, in Tennessee, in December, 1858, not knowing whether he would remove from this State or not, but intending to accept whatever appointment should be assigned him by the conference, and that

an appointment was assigned him out of this State, which he accepted, and, in consequence of that, removed from this State; that the slave was left in this State and was, in February, 1859, levied on under the execution in favor of the appellants against Allen, and sold, the appellants becoming the purchasers.

The first position taken for the appellants is, that the conveyance of the husband to the wife was made in contemplation of his removal from this State, and to secure the slave to the use of his family after such removal, which otherwise would work a forfeiture of the privilege of exemption secured to him by the statute; and hence that the deed was a fraud upon the statute and void. It is said that there could be no motive for the act, unless it was to obviate the consequence of the removal, inasmuch as the slave was secured to him by the statute as long as he resided in this State, and after his death here belonged to his wife.

But whatever might have been the force of this view if there had been no evidence in opposition to it, it is shown by the positive testimony of Allen that the deed was not executed with reference to his removal from this State; that though he intended to accept the appointment to be assigned to him by the conference, yet that he did not know where he was to go, and it was as likely that his appointment would be in this State as elsewhere. Moreover, it is not unreasonable or improbable that he should wish in good faith to give the slave to his wife so as to vest the title absolutely in her, thereby giving her the entire benefit of the property, and placing it in a condition in which he would have no trouble in defending his title. The bill states that the purpose in making the deed was to secure some small amount of property for the support of his wife; and certainly the execution of the deed was the most effectual mode of accomplishing that object.

We do not, therefore, consider this objection to the wife's title valid.

It is, next, insisted that the deed is void as to the appellants who were creditors of the husband at the date of it, in virtue of the provision of Art. 23, Rev. Code, 336, which is in these words: "Provided, that any deed from the husband to the wife, for her

use, shall be void as against his creditors, who were such at the time of executing the deed," &c. It appears to be conceded by the appellants' counsel that a person holding property exempt from execution under the statute may make a sale or gift of it, except to his wife.

But it is contended, in behalf of the appellees, that this case is not within the prohibition of the statute, because this slave, not being subject to execution, the rights of creditors could not be affected by the conveyance. And we consider this a correct view of the subject.

The object of the statute obviously was, to prevent frauds upon the rights of creditors, to whose claims the property conveyed by a husband to his wife was subject and ought to be applied. This valuable right of creditors was intended to be protected and frauds upon it prevented. But no reference was had to creditors in any other sense or to any other purpose; and though persons were creditors generally of the husband, yet if a particular piece of property was wholly exempt from any liability to them, they could not be said to be creditors as to that property, so as to make a conveyance of that property a matter of concern to them. As to that property, the debtor would be considered as without creditors; and the owner would have the right to dispose of it as though he had no creditors.

We are of opinion that the statute does not apply to property in the condition of the slave here in controversy; and that this objection to the deed is untenable.

Let the decree be affirmed.