KLINE *et al. v.* SIMS *et al.**

(Division B. Nov. 14, 1927.    Suggestion of Error Overruled Jan. 9, 1928.)

[114 So. 871.  No. 26522.]

1. FRAUDULENT CONVEYANCES. *Bulk Sales Law held to apply to sale by individual to corporation; creditor not given notice required by Bulk Sales Law may recover against purchaser, though creditor's demand is based on transactions other than sale of goods in question; Bulk Sales Law applies in favor of all creditors (Hemingway's 1927 Code, sections 3335-3338).*

   The Bulk Sales Law, sections 3335-3338, Hemingway's 1927 Code (Laws 1908, chapter 100), applies to a sale from an individual to a corporation; and where notice was not given to all the creditors in such case, the creditor to whom notice was not given may maintain a suit against the purchaser, although the creditor's demand is based on other transactions than the sale of goods embraced in the mercantile business. Such statute applies in favor of all creditors.

2. FRAUDULENT CONVEYANCES. *Buyer purchases at peril regardless of good faith, if list of seller's creditors required by Bulk Sales Law does not include all creditors (Hemingway's Code 1927, sections 3335-3338).*

   The buyer purchases at his peril in such case if the list of creditors furnished by the seller does not embrace all creditors; and his good faith in such transaction does not exonerate him from liability.

3. FRAUDULENT CONVEYANCES. *Creditor not given notice of sale required by Bulk Sales Law may by statutory proceeding acquire lien against purchaser with which other creditors do not share (Hemingway's Code 1927, sections 328, 3335-3338).*

   The creditor in such case may proceed under section 328, Hemingway's 1927 Code (section 553, Code of 1906), and by proceeding acquire a lien in which the other creditors do not share, the creditor proceeding being entitled to the benefit of his diligence.

4. FRAUDULENT CONVEYANCES. *Purchaser of goods held not entitled to have amount paid certain of seller's creditors apportioned pro rata, with creditor not given notice, and instituting proceedings under Bulk Sales Law (Hemingway's Code 1927, sections 3335-3338 and section 328).*

Where a creditor under the Bulk Sales Law, *supra*, proceeds under section 553, Code of 1906 (section 328, Hemingway's 1927 Code), the purchaser of the stock of goods, who has paid other creditors, is not entitled to have the amount paid to such creditors apportioned *pro rata* with the creditor who institutes the said proceedings, where such creditor was not given notice by the Bulk Sales Law.

---

*Corpus Juris-Cyc. References: Fraudulent Conveyances, 27CJ, p. 874, n. 16; p. 879, n. 88; p. 882, n. 23; p. 884, n. 53, 54; p. 885, n. 67, 68; p. 890, n. 56 New; p. 893, n. 23; On statutory requirement of notice to creditors under Bulk Sales Law, see annotation in L. R. A. 1917F, 230; 12 R. C. L. 525; 2 R. C. L. Supp. 1443; 5 R. C. L. Supp. 649; 6 R. C. L. Supp. 713.

APPEAL from chancery court of Bolivar county.

HON. HARVEY MCGEHEE, Chancellor.

Suit by R. N. Sims and others, as trustees, against M. Kline and others, to sequester goods and for the discovery of the cost price of certain goods. From the judgment, defendants appeal. Affirmed.

See, also, 113 So. 190.

*Green, Green & Potter,* for appellants.

Decree was erroneous in allowing one creditor to hog entire stock contrary to Bulk Sales Act. A transaction without fraud is valid, even under the statute. *Dry Goods Co.* v. *Rowe,* 97 Miss. 785, 53 So. 626; *Fechheimer-Keiffer Co.* v. *Burton,* 51 L. R. A. (N. S.) 343, 164 S. W. 1179; *Johnston* v. *Washburn,* 77 So. 461.

*Pro rata* participation was appellee's sole right—equality is equity. *Dean* v. *Bowles,* 70 So. 693, 110 Miss. 757; *Peters Branch International Shoe Co.* v. *Gunn,* 121 Miss. 679, 83 So. 742; *McLendon* v. *Peoples Bank of Lumberton,* 111 So. 843; *Allison* v. *Williams,* 142 Miss. 825, 108

So. 142; *Fechheimer-Keiffer Co.* v. *Burton* (Tenn., 1914), 164 S. W. 1179, 51 L. R. A. (N. S.) 343; 12 R. C. L. 530, sec. 59; 27 C. J. 886; *Keller* v. *Fowler Bros. & Cox*, 256 S. W. 879; *Pratt Paper Co.* v. *Eiffler*, 194 N. W. (Iowa, 1923), 370, 373; *Bank* v. *Shop*, 124 Atl. 308; *Hicks* v. *Beale et al.*, 163 Pac. 83, 1917D L. R. A. 1967; *Linn County* v. *Davis and Glascock, Garnishee*, 175 Pac. 972, 9 A. L. R. 468, 51 L. R. A. (N. S.) 343; *Scheve* v. *Vanderkolk et al.*, 191 Nebr. 149, — N. W. 401; *Prins* v. *American Trust Company* (1925, Ark.), 275 S. W. 914; *McMillen* v. *Nelson* (1921, S. Dak.), 181 N. W. 618; 2 Williston's on Sales (2 Ed.), sec. 643; *Hartwig* v. *Rushing et al.*, 182 Pac. 177.

*Roberts & Hallam, Green, Green & Potter* and *Cutrer & Smith*, for appellants.

With respect to the Bulk Sales Law, the Bulk Sales Law never intended to operate in favor of subsequent creditors. It is undenied that Kline had been adjudged not to owe the trustees at the time of the Bulk Sales transaction. In *Montanyne* v. *Wallaha*, 84 Ill. 355, it is held: "That if a decision is reversed on appeal in reliance upon which a sale of property effected, the subsequent claiming of a rehearing followed by the decision adverse to that first rendered will not affect the title of the purchaser of the property." To the same effect is: *Doe* v. *Natchez Co.*, 13 S. & M. 182; *Natchez Co.* v. *Helm*, 46 Miss. 669; *McKinney* v. *Green*, 52 Miss. 70; *Memphis Gro. Co.* v. *Adams*, 76 Miss. 322; *Foster* v. *Hordon*, 54 Miss. 509.

A deed or bill of sale is not void, as to subsequent creditors, unless made expressly to defraud them. Hemingway's Code 1917, secs. 1320-1322; *Wright* v. *Henderson*, 7 How. 539; *Donahue* v. *Shell*, 85 Miss. 404; *Simmons* v. *Ingrahm*, 60 Miss. 886. There were two suits pending in the circuit court of Bolivar county. Judgment was rendered in one case on two of the notes. The notes were

identical in every particular, saving the dates of maturity. The judgment in one case on two notes was *res adjudicata* as to the other there would be no debt existing as to that. *Gross* v. *Todd,* 49 Miss. 168; *Railway Co.* v. *Sivley,* 111 Miss. 21.

*Shands, Elmore & Causey,* for appellees.

The failure to include in the list one creditor and the failure to give notice to that one creditor, notwithstanding the sale and purchase had been made in good faith, which we deny, renders the sale void. *Walton* v. *Walter Fisher Company,* 146 Miss. 291, 111 So. 364.

Appellants do not show what creditors were in the same class as complainants, on an equal basis with complainants, so that the maxim invoked by them, equality is equity, may be applied intelligently and not haphazardly.

Furthermore, the court will observe that the cases of *Fecheiner-Keiffer Company* v. *Burton* and *Keller* v. *Fowler Brothers & Company* and *Pratt Paper Company* v. *Eiffler* and *Bank* v. *Shoppe* and *Hicks* v. *Beale* and *Linn County* v. *Davis,* the first six cases cited on this proposition, quoted liberally by appellants, go on the ground without exception that the purchaser is entitled by subrogation to the rights of the creditors who have been paid with the purchasers' money. Our court seems to hold that a party cannot obtain relief by subrogation in the absence of a cross-bill. *Preston* v. *Banks,* 71 Miss. 601; *Edwards* v. *Hiller,* 70 Miss. 803; *Doty* v. *Timber Company,* 114 Miss. 872.

It is more important to note, however, that the exact point has been decided, and has been decided contrary to the position asserted by appellants, in *International Shoe Company* v. *Gunn,* 121 Miss. 679.

Such paper transactions of the character here disclosed in the incorporation and the transfer to the corporation have been resorted to before and some of them have

come under judicial investigation in courts of equity. We call the court's attention to a few. *Hoffman Steam Coal Company* v. *Cumberland & Iron Company,* 77 Am. Dec. 311, 321 (Md.); *First National Bank* v. *Trebein Company,* 52 N. E. 834, 837, (O.); *Roberts* v. *Hughes Company,* 83 Atl. 807, 812 (Vt.); *Bourgeois* v. *Ristlin Real Estate Company,* 88 Atl. 199, 200 (N. J.); *Sackelos Company* v. *Hutchison Bros.,* 99 Atl. 357; *Johnson* v. *Cook,* 146 N. W. 343.

If the above authorities and the facts about the organization of M. Kline, Inc., and the facts about how all of M. Kline's property came to be cached in his corporation or in his wife do not show fraud and bad faith on the part of Kline and the corporation as against these complainants, how can proof thereof be made? Must complainant show a sign from Heaven?

But if anyone can be found to say that these twistifications are honest and good there still remains this important circumstance; M. Kline and M. Kline, Inc., are in equity one and the same. A court of equity will tear away the web of disguise and will look in the face of the real substance. The name of the corporation is happy and apt. The corporation is indeed and in truth M. Kline himself incorporated. In line with the above authorities and in line with the real facts which are of more importance than the authorities, we feel authorized to say and do say that M. Kline, Inc., is no more or less than M. Kline in a new dress; he has simply changed his habiliments; all its movements are his; without him it has no life or being.

Therefore, any claim that M. Kline, Inc., is subrogated to the rights of creditors against M. Kline is in substance a claim that M. Kline himself is subrogated to the rights of creditors against M. Kline himself. Such indeed is the claim of appellants if regarded in the light of fact and not in the darkness of fiction. M. Kline wants to take our claim against him and reimburse himself for·

what he has paid his other creditors. Yet, he says on this point that complainants are trying to act hoggish.

The argument that complainants are entitled to only a *pro rata* participation is, therefore, a total loss. Because the matter is not properly pleaded or proven; because the exact point has been heretofore ruled against the contention by this court; and because at last M. Kline himself, the debtor himself, would be the sole beneficiary of the subrogation of M. Kline, Inc., to the rights of the creditors of M. Kline.

Argued orally by *Garner W. Green* and *J. W. Cutrer,* for appellant, and *A. W. Shands* and *H. H. Elmore,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This is the second appeal in this case, the first being reported in *Sims et al.* v. *Kline et al.,* 139 Miss. 246, 104 So. 85, and the material facts, as they then existed, and the law bearing thereon, are shown in the report of that case.

After the case was remanded to the circuit court, from which it came on the former appeal, a bill was filed in the chancery court seeking sequestration against the goods and effects of M. Kline, in which bill it was alleged that in the year 1924, M. Kline was unable to meet the demands of his creditors and was insolvent; that he was engaged in the mercantile business at Alligator and at Merigold; that his stock of goods at Alligator exceeded thirty thousand dollars in value, and at Merigold fifteen thousand dollars in value; that Kline conceived the idea of forming a corporation to take over his mercantile business in such a way as that his debts would be defeated, and therefore M. Kline was incorporated, its sole spirit being said M. Kline, and the goods were transferred to M. Kline, Inc.; that the consideration therefor was inadequate, in gross disproportion to the

value of the property so transferred; that the corpora-
tion took charge and has since been conducting the busi-
ness; that no attempt was made to comply with the Bulk
Sales Law governing such sales; and that the corpora-
tion has converted to its own use the greater proportion
of the stocks of merchandise; that the said M. Kline,
Inc., has so replaced and replenished the stock, placing
in new goods to take the place of that sold, as to con-
fuse the goods purchased from M. Kline with goods from
other parties, so that the same are indistinguishable.
The bill further alleges that both M. Kline, M. Kline,
Inc., and Fisher, are insolvent, and that it is the purpose
of said corporation to protect said stock of merchandise
from the creditors of M. Kline, especially the complain-
ants; that much personal property has been sold by M.
Kline, Inc., and that the complainants aver that sub-
stantially all the accounts and securities will, on notice
of this suit, be transferred to third parties with the in-
tent to hinder, delay, and defraud complainants; that
unless said stock of merchandise be seized under a writ
of sequestration, said stock of merchandise will be dis-
posed of and placed beyond the reach of these complain-
ants, and the amounts owing by the debtors of M. Kline,
Inc., will be either collected and concealed or transferred
to other parties so as to defeat and defraud complain-
ants of their just debts, and that all acts were done to
hinder and defraud creditors; that the complainants are
entitled to a personal judgment against M. Kline and
Fisher, and to a decree against M. Kline, Inc., for the
full value of said stocks of merchandise sold to M. Kline,
Inc., aforesaid. The bill also asks for discovery as to
cost price, etc. The affidavit to the bill was made by H.
H. Elmore, one of the attorneys for complainants, who
alleges that he has good cause to believe, and does be-
lieve, there is danger of concealment in the state of the
stocks of merchandise and books of account of M. Kline,
Inc., at Merigold, and at Alligator, so as to be beyond
the process of the court and of the transfer of said prop-

erty so as to defeat the rights of the complainants, and that such concealment and transfer are about to occur.

The defendants to the bill appeared and answered same, and, in answering admitted that M. Kline, in 1924, sold the stock of goods, or transferred them, to M. Kline, Inc., and that they did not give the complainants notice of such sale five days before the consummation thereof under the terms of the Bulk Sales Law, Hemingway's 1927 Code, sections 3335-3338 (Laws of 1908, chapter 100), contending they were not required so to do; that the suit in the circuit court had been tried, and judgment had been rendered in favor of M. Kline therein, which was in force and unreversed at the time of the sale, and that it had been adjudicated in said suit; that the complainants were not creditors of M. Kline; and that the purchasers of the stock of goods of M. Kline, Inc., had the right to rely upon such judgment as being true and governing in such matter.

There was much testimony offered on the issues involved and conflict on most of the issues presented.

At the conclusion of the evidence, the chancellor decreed for complainants, and rendered judgment on the forthcoming bond of defendants under the writ of sequestration, from which judgment they appealed.

Most of the questions presented on the former appeal and decided there are reargued in this appeal. We, however, think the former appeal was correctly decided, and that the law announced therein is the correct pronouncement of the law applicable to the issues involved on the liability of M. Kline under the instruments and testimony of complainants in the former record.

It is argued here that the Bulk Sales Law is inapplicable to this transaction, and that as M. Kline, Inc., had paid off most of the creditors, if not all of them, other than complainants, that the complainants had no right to recover against the purchasers, M. Kline, Inc., for the value of such goods so purchased; that the complainants

149 Miss.—11.

were not creditors of the partnership, nor of the stock of goods involved in the transaction.

We are of the opinion that the statute is applicable. It is conceded that no notice was given to the complainants, and the complainants were creditors of M. Kline, and when the stock of goods was sold without compliance with the terms of the Bulk Sales Law, said complainants had the right to resort to the goods to the extent of the value thereof against the purchaser of the same for the value of their claim. The statute uses the language, "shall be presumed to be fraudulent and void," etc. The term "creditors" used therein embraces all creditors of a merchant selling a stock of goods, and whatever may be the right, so far as the purchaser is concerned, and so far as the seller is concerned, the creditor has a right to resort to the stock of goods for the satisfaction of his debt, or to the purchaser of a stock of goods who has failed to give the notice required by the statute.

It has been decided that a buyer purchases at his peril if the true list of creditors is not disclosed, and that his good faith does not avail him if he fails to procure a list of the creditors as required by the statute.

It is contended that if the Bulk Sales Law does apply, as we hold it does, that the complainant is only entitled to recover his *pro rata* of the defendant purchaser, and that the other creditors are entitled to participate *pro rata,* and that the purchaser, having paid the other creditors, is entitled to be put in their place in subrogation, and only to pay such part of the complainants' demand as the total demand bears to the total of the creditors of the defendant, measured by the value of the stock of goods on hand at the time of the sale. We are not able to reach a conclusion in accordance with this contention. We think the Bulk Sales Law is a part of a scheme of attacking fraudulent sales and concealment, and that the complainants have the right to attack such sale under section 328, Hemingway's 1927 Code (section 553, Code of 1906), which reads as follows:

''The said court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon, returned 'no property found.' Upon such a bill a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such writs may be issued in other cases, and subject to such proceedings and provisions thereafter as are applicable in other cases of such writs; and the chancellor of the proper district shall have power and authority to grant orders for receivers, in same manner as if the creditor had recovered judgment and had execution returned 'no property found.' The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against *bona-fide* purchasers before the service of process upon the defendant in such bill.''

We think the creditor who proceeds under this statute is entitled to the benefit of his diligence, and that, under the language of the statute, he has a lien upon the property sold on this sequestration. He is not required to bring suit on behalf of all the creditors, but may sue for his own demand and get the benefit of his diligence. Creditors who will not act, or who are not diligent in asserting their demands, are not entitled to participate equally with the man who is diligent, and who has incurred the risk and expense of proceeding to attack a fraudulent conveyance. If other creditors intervene in the suit, they may, by so doing, take their places in line with creditors according to the date of their proceedings, but they are not entitled to share in the proceeds of the first creditor's diligence and activities, and such creditor is entitled to have his claim first paid. If other cred-

itors desire, they may attack, or sue out writs of sequestration, or take any other appropriate action; but they must do so at their own risk, and they are not entitled to participate in the activities and diligence of the creditor who first takes action.

It is contended that the complainants have no right to maintain the suit, and a number of other contentions are set up. We have considered them, but think they are without merit, and that the trustees did have the right to bring suit, and that the defendants may, if they so desire, pay the money into court and will be exonerated when they have done so. The defendants are not entitled to set up the rights of other parties. The trustees, of course, were not acting for themselves in their personal capacity.

The court below will, no doubt, see that the money is applied as it ought to be, and parties interested can assert their rights.

We are of the opinion that the court below reached the correct conclusion, and the judgment will be affirmed.

*Affirmed.*